Good morning, Your Honors. I'm Scott McInnis. I'm the attorney for the Petitioner Pacific Ship Repair and Fabrication, the employer for Ms. Deborah Benge for her 1999 injuries. The issue in this case is whether an injury can go from being permanent in nature to temporary in nature, absent a new injury. In Mrs. Benge's case, does the nature of her injury go from permanent in nature to temporary in nature, simply because she underwent a surgery which increased the extent of her disability from partial to total? In ruling on this issue, the Administrative Law Judge ruled that the nature of Mrs. Benge's injury reverted back to temporary, despite being at a permanent nature for over seven years, simply because she underwent a surgery to stabilize that original injury. One thing that you're leaving out of the description are the qualifiers of partial with respect to the first permanent disability. I mean, it would be a different case if she was permanently disabled without the partial. We wouldn't be here, I guess. But so the issue is whether you can go from a permanent partial to a temporary total and then back again, right? Correct. Okay. And on that point, we have a case called Price v. Steve Adorian Services of America. I'm sure you're familiar with that. There's multiple Prices. Are you talking about those? Okay. I'm talking about the one in 2010. The one that you just had oral arguments on? 627 Fed Third. As I understand it, in – I apologize. I've mistaken. I've misstated the case. I am instead referring to Pittsburgh and Conout Dock Company. As I understand it, under number one, Price, and also this other case that I just mentioned, the Pittsburgh case, we're supposed to consider whether the director's position on compensation is reasonable. Do you agree that that is the standard of review that we have here, whether, in fact, it is reasonable to permit a reversion to the temporary condition after surgery? No. I would say that the standard is that you're – that they're a litigant in this case. And as a litigant, they should not be held to have that deference. What is the standard then? The standard would be just like any other appellate standard. Was there – was the law followed? So we give no deference at all? In our opinion, no, because they're taking a litigation position. They're a party to this case. They're the ones that were in control of the second injury fund and doling out her money. Do you have any authority for your position on that? Yes, Your Honor. In Bowen v. Georgetown Hospital, 488 U.S. 204, the Court said that when the director is a litigant in the case, they should not be provided that deference. The – this Pittsburgh case I referred to earlier, and I'm just quoting here, the mere possibility of improvement in the future necessarily precludes a finding of permanency. Now, that is a Sixth Circuit case, admittedly. What's your position on that? Can you restate that, Your Honor? Yes, I will. The mere possibility of improvement in the future necessarily precludes a finding of permanency. Well, I don't know what the exact context that you're pulling that out, but in the – Let me read you a little bit more on this, because if you're not familiar with the case that I'm quoting here. If an employee's condition does improve after he or she has been determined to be permanently disabled, the employer may have the employee's condition re-evaluated. And that's at 259, Note 1. They can have it re-evaluated. Let's say that the condition is permanent and total, and the employer says no, they might get better still. That doesn't cut off a determination that their condition is permanent, because the employer can come back in at a later date and request to modify the extent of that disability. They can request to modify down the permanent – I'm sorry, the total disability down to a partial disability, or if the condition improves completely, they can request that they no longer be considered disabled. Okay. Let me ask you this. She had a partial permanent disability. She was working, right? She was working not at the job she had before, but she was doing something that was – She had some residual – Right. She was able to work. When she had her surgery, right after her surgery for I think it was a period of nine weeks or whatever, she couldn't do anything. I mean, she was flat on her back, as I read the record. She couldn't do anything. So she was total something. She was no longer partial, right? Because she wasn't making any money. She wasn't working at all. What would you have had her called at that point? Wait, because at the end of the period of recovery from the surgery, they expected her to be able to go back and resume her work again. So what would you call her if you wouldn't call her total temporary? I would call her permanent total. Permanent total. But it wasn't permanent. They expected her to go back. And don't the cases say the possibility that she can go back? The case of Stevens versus the director is very instructive on this point. The case of Stevens, this is the Ninth Circuit Court of Appeal opinion from 1990, wherein the court says when you're evaluating the nature or the duration of an injury, it must be separate, must analyze that separate from the extent or the degree of an injury. Just because the degree of an injury changes, albeit even on a temporary basis, that doesn't mean that you change permanency. There's too many things that are triggered and too many rights that are triggered under the Longshore Act when somebody becomes permanent. For instance, somebody can be, when somebody is permanent total, they are entitled to COLAs. Every October 1st, their disability rate is reevaluated and increased at the rate of wage inflation to reflect a higher compensation rate. That's only under permanent total. When you're temporary total, you're not entitled to those COLAs. So simply because if somebody was permanent and total and then they have a surgery just like she had and they're bedridden, under the analysis that the administrative law judge used, that person would then be reverted from permanently totally disabled to temporary totally disabled, and that vested right of getting the COLAs would be taken away from that injured worker. That is not a result that we should have. Further, the Act, Section 908E of the Longshore Act, provides that a temporary partially disabled employee is only entitled to compensation for a period of five years. So there's an incentive for that person to become permanently partial because there's no time period. So if the director can just shift them back into temporary partial, they'd be going up against the clock on that five years. But we're talking about the law. That is sort of the policy of how this is set up is not something we're supposed to delve into. And you're basically saying because somebody could game the system potentially and still you'd need some doctors to support, you know, what you're saying, that doesn't seem to me to be an argument as to why you couldn't have this transition that's argued for here and why this interpretation of the statute doesn't make sense. Well, because the vested right that the employee is getting would be taken away if they go and they seek medical treatment that puts them in a period of recuperation. In this case, her injury was never going to be considered temporary. It is undisputed. The court found in 2002 that she was permanently, her injury was permanent as of 2000. Partial. Partial. Partial. Partial. Partial. Partial. Right. To say in the end what's an important part of that is this employer was entitled to Section 8 relief, Section 908F, which is the second injury fund. So this worker came to work for Pacific with an injury already, and her injury at work combined with her previous injury made her condition worse. So as an incentive for employers to hire people with a preexisting injury, the Act provides the second injury fund relief. So after 104 weeks of permanent disability, regardless of whether it's permanent partial or permanent total, the liability then shifts to the industry-funded second injury fund, which is administrated by the director. That employer, if they're allowed to just transition them back into temporary, that incentive to hire an injured worker is partially taken away. They're unable to plan for what their liability is because they don't know if the person is going to be transitioned back into a temporary status. So what about the ADA? You know, I mean, in other words, I don't think they ought to be sitting there, you know. They've got a whole other Federal problem which is not really in this case, but there are Federal laws related to the ADA. And the first thing, when I read that argument in the brief, I thought, well, if the employer is actually thinking that, they've got like another liability problem hanging out in the air. It's a big enough of a problem that the legislature placed in this incentive into the Act. So it is a significant enough problem. So if you're right, then there should be some kind of apportionment of damages during this interim period? No. No? I think once you're permanent, you're always permanent. But she was going into a state of total injury, if you can call the surgery that, total injury. And that total injury situation was only going to take place for a temporary period of time. So how could she be called permanent total when at the time it was clear that it wasn't permanent? It was only anticipated that the totality, that her being bedridden in incapacity was going to be temporary. But you have to analyze the nature of an injury, the duration of an injury, separate and completely apart from the extent. What changed was the extent of her disability. I see what you're saying. She went from having some residual earning capacity, some ability to work, to having none. So you would have called her permanent total? I would have called her permanent total. And we stipulated that she was total. The dispute in this case, everybody stipulated that she was totally disabled. The dispute in this case came down between the employer and the director over who paid the increased benefits. Well, yeah, I think that's why you're here. That's always what it's about. Always what it's always about. Did you want to save your time, the remaining time? Thank you, Your Honor. May it please the Court. I'm Joshua Glellen, appearing on behalf of Ms. Benge. We rely on, I think there are two critical points here. One is the ordinary meaning of the word temporary, which is not expected to continue indefinitely. Then there is case law, interpreting what that means here. And I think with respect, now counsel has the court doing it. There is no such thing here as a permanent or a temporary injury. There is no such thing as a partial or a total injury. But throughout the reply brief and even in some of the Court's questions to my brother, we hear references to a permanent partial injury or a temporary total injury. No, there is no such thing. It is the disability that is classified as permanent or temporary. This injury is absolutely correct. Ms. Benge's injury was permanent and will always be permanent, or so medical science believes, and I think it's likely. But her disability went from a partial disability, which was expected to continue indefinitely, to a total disability that was expected to be ameliorated with the passage of the normal healing period. That's what distinguishes a temporary disability from a permanent disability. And there is no reason that that meaning of permanent versus temporary disability should be different because for a period the disability, the partial disability, has been classified as temporary. It was, excuse me, has been classified as permanent. As it was here for a period of eight years before, it worsened, required medical treatment. The worsening made it a total disability, but the medical treatment was expected to ameliorate that total disability and return her to some earning capacity, which is to say to a partial disability. That's the simple aspect of this case. Now, I'm not sure that I heard properly, Judge Smith, when you read one sentence from the Pittsburgh Incono Dock Company case. But the part that I heard was the possibility of improvement in the future necessarily precludes a finding of permanency. Correct. That's part of the sentence, and the rest of the sentence and the sentence that follows it say the case law is replete with statements to the contrary. So I don't know whether I misunderstood your quotation of that, but that's exactly the point we're making. Well, I apparently didn't read far enough. Yes, that sentence was a description of the employer's argument in that case, which the Court in the next sentence then rejected. And we've set forth, I think, at pages 16 to 18 of our brief, the many authorities that the Court was talking about there. As to the standard of review, that is certainly a very interesting issue. But as I think you know, the Price decision has been vacated by the grant of rehearing en banc. The Court has heard argument en banc, but has unsubmitted the case or vacated the submission pending the outcome of the Supreme Court decision on one of the issues there. So I don't know how to address that, but I think in this case, it's not at all necessary for the Court to get into that standard of review. All we're relying on here are not deference to the board or the director, but simply the ordinary meaning of the word temporary and the case law, court of appeals case law, not the board or the director, saying temporary means it's expected to get better with a normal healing period. The possibility of some improvement in the future is not enough, but an expectation of improvement makes it temporary. If the Court has no questions, I think those are the great ones. If the Court has no questions, I would love to move on to the attorney v. liability issue if the Court is interested in hearing about that now. Let me just ask you, why isn't that premature at this case, at this point? As part two of our brief shows, review of the board's ruling that the employer is liable for fees for the services below is indeed premature. And I understand my brother to agree with that proposition now. However, for purposes of the services before this Court in the present proceedings, I think the Court is faced with precisely the same issue. And if the board was right, then Mr. Winter and I should recover fees for successfully opposing the petition for review in this Court. Well, we're not there yet. We are not there yet. I do not mean to anticipate a particular result, Your Honor. But if the Court is interested in its own fees. Anyway, I don't think the attorney's fees needs to be argued, because it either you know, it's either premature because it's on the lower level, and if there's a decision in this Court, then we have a procedure for applying for attorney's fees. So. Then if the Court has nothing further, I will not trouble you further. Thank you. Thank you. May it please the Court. My name is Jonathan Rolfe, and I represent the Director, Office of Workers' Compensation Programs, United States Department of Labor. The Director's position, we agree totally with what counsel for Ms. Benj just said. The statute doesn't define permanent or temporary, but there are years and years and years of case law that does. And based on the undisputed facts of this case, it leads to only one conclusion. The only testimony on the record was that she was going to get better. That was both from her doctor and from herself. There's no other testimony. So at least as far as that goes, I don't think that the definitions can lead anywhere else. Now, in terms of the Stevens case, which you touched on briefly, that case was actually about when does total become partial. It wasn't about the nature of injury, which is at issue in this case. It was purely about extent. And what had happened in that case is the ALGA had determined that the claimant had reached a state of maximum medical improvement in 1982. It wasn't until 1985, however, that suitable alternative employment was found. And the board actually applied it retroactively to 1982. Again, that deals only with extent. In this case, what we're dealing with is nature. And the facts regarding nature aren't in dispute. What about the deference to director's position or interpretation of the statute? What is your position on that? Again, it's up in the air after Price. But even with the lowest level of Skidmore deference, what we need, we've been consistent with this point at least since the board positions that are cited in our brief, and it hasn't changed. So in that case, I think a reasonable interpretation carries the day. I would say this again. So at a minimum, we have a baseline of Skidmore. Correct. I was looking at this case cited by your opposing counsel by Mr. McInnis, the Bowen v. Georgetown Hospital. Are you familiar with that case? Bowen v. Georgetown? I'm not. Okay, that's fine. I'll ask him about it since he's the one that brought it up. Thank you. I'm looking at George. You had cited Bowen v. Georgetown Hospital for the proposition that there shouldn't be any deference to the office director because the office is also a litigant. But I'm looking at that case, and they were talking about the authority of the agency to actually promulgate a rule. So I'm having some trouble understanding what the applicability of Georgetown Hospital is to this case. Maybe you can enlighten me. Well, in this case, the director is a litigant. They're taking a position on what the ultimate outcome is. So their interpretation should be looked at in the light that they are a litigant in this case, and that should be considered when applying any deference to their opinion. But what's the Georgetown case had to do with actual statutory authority, which we don't have an issue here of statutory authority, do we? Interpretation of statutory authority? No, whether there is statutory authority. I would concede that. Okay. I want to point out a couple things. The Stevens case is instructive to us not for the proposition of whether an injury becomes permanent versus temporary. It's important because it tells us we have to analyze the two issues separately. And it also tells us that the extent of an injury is an economic factor. And what happened in this case is the economics of her injury precluded her from further work. That goes to the extent. We don't need to go to the nature of the disability. She had a permanent disability. It wasn't intended to cure her disability. The only change in the circumstances in this case is that she was no longer able to fulfill the requirements of gainful employment. Thank you, Your Honor. Thank you. Thank all counsel for your argument this morning. The case of Pacific Ship Repair v. the Director, OWCP, is submitted. And that concludes the calendar for this morning. We're adjourned.
judges: Rothstein, McKeown, Smith